**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| MARQUAN ROCHELLE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 11-2150-CM |
| ) | |
| HY-VEE, INC., ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM AND ORDER**

Plaintiff Marquan Rochelle, represented by counsel, brings this action against Defendant Hy-Vee, Inc., alleging retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e *et seq*. Before the court is defendant's motion for summary judgment (Doc. 50). For the reasons set out below, defendant's motion for summary judgment is granted.

**I.     Factual Background**

In his complaint, plaintiff filed suit against defendant, alleging racial discrimination and retaliation. The sole claim on which plaintiff proceeds is the retaliation claim. Plaintiff alleges that defendant retaliated against plaintiff after he filed a charge of discrimination on June 7, 2010 with the Kansas Human Rights Commission ("KHRC") and the Equal Employment Opportunity Commission ("EEOC"). Specifically, plaintiff claims that defendant retaliated by reducing plaintiff's hours after he filed his claim.

Plaintiff worked for various Hy-Vee stores over a fourteen-year period. Plaintiff commenced his employment at the Hy-Vee store known as Olathe #2 on June 9, 2008 as a full-time employee in

the meat department.  Starting in September 2009, plaintiff started working as a part-time employee after plaintiff stated that he could no longer work evening hours.

According to Mr. Wellinghoff, "part-time employees are scheduled to work based on factors such as the dates and times full-time employees are scheduled to work in a given week coupled with the part-time employee's availability, how busy the department is expected to be on a given day . . . and the part-time employee's past performance."  (Doc. 51-1.)  During the weeks of September 28, 2009, through January 11, 2010, plaintiff was scheduled to work 30 hours per week (with the exception of two holiday weeks).  During the weeks of January 18, 2010, and January 25, 2010, plaintiff was scheduled to work 22 hours.  The number of hours plaintiff was scheduled during the weeks of February 1, 2010, through June 7, 2010, ranged from 0 to 25 hours.  On June 7, 2010, plaintiff filed a charge of discrimination with the KHRC and the EEOC.  For the weeks of June 14, 2010, through May 9, 2011, plaintiff was scheduled anywhere from 6 to 30 hours per week.

Plaintiff resigned on May 15, 2011.  In plaintiff's deposition, after seeing documentation of the hours he was scheduled to work before and after he filed his charge, plaintiff agreed that his hours had not changed in any appreciable way after he had filed his charge.  (Doc. 51-2.)  Plaintiff's scheduled hours provided by both parties are as follows:

| Year | Week Starting | Number of Hours Scheduled |
|---|---|---|
| 2009 | 9/28 | 30 |
|  | 10/5 | 30 |
|  | 10/12 | 30 |
|  | 10/19 | 30 |
|  | 10/26 | 30 |
|  | 11/2 | 30 |
|  | 11/9 | 30 |
|  | 11/16 | 30 |
|  | 11/23 | 18 |
|  | 11/30 | 30 |

|      | Date | Value |
|------|------|-------|
|      | 12/7 | 30 |
|      | 12/14 | 30 |
|      | 12/21 | 24 |
|      | 12/28 | 30 |
| 2010 | 1/4 | 30 |
|      | 1/11 | 30 |
|      | 1/18 | 22 |
|      | 1/25 | 22 |
|      | 2/1 | 5 |
|      | 2/8 | 10 |
|      | 2/15 | 0 |
|      | 2/22 | 10 |
|      | 3/1 | 5 |
|      | 3/8 | 10 |
|      | 3/15 | 10 |
|      | 3/22 | 5 |
|      | 3/29 | 5 |
|      | 4/5 | 5 |
|      | 4/12 | 15 |
|      | 4/19 | 10 |
|      | 4/26 | 20 |
|      | 5/3 | 25 |
|      | 5/10 | 10 |
|      | 5/17 | 25 |
|      | 5/24 | 20 |
|      | 5/31 | 15 |
|      | 6/7 (filed charge) | 16 |
|      | 6/14 | 15 |
|      | 6/21 | 6 |
|      | 6/28 | 15 |
|      | 7/5 | 16 |
|      | 7/12 | 15 |
|      | 7/19 | 11 |
|      | 7/26 | 10 |
|      | 8/2 | 15 |
|      | 8/9 | 16 |
|      | 8/16 | 20 |
|      | 8/23 | 21 |
|      | 8/30 | 16 |

|      | 9/6   | 21       |
|------|-------|----------|
|      | 9/13  | 20       |
|      | 9/20  | 21       |
|      | 9/27  | 21       |
|      | 10/4  | 27       |
|      | 10/11 | 17       |
|      | 10/18 | 29       |
|      | 10/25 | 23       |
|      | 11/1  | 17       |
|      | 11/8  | 12       |
|      | 11/15 | 24       |
|      | 11/22 | 30       |
|      | 11/29 | 30       |
|      | 12/6  | 24       |
|      | 12/13 | 30       |
|      | 12/20 | 24       |
|      | 12/27 | 30       |
| 2011 | 1/3   | 18       |
|      | 1/10  | 30       |
|      | 1/17  | 24       |
|      | 1/24  | 24       |
|      | 1/31  | 24       |
|      | 2/7   | 24       |
|      | 2/14  | 24       |
|      | 2/21  | Vacation |
|      | 2/28  | 16       |
|      | 3/7   | 16       |
|      | 3/14  | 16       |
|      | 3/21  | 30       |
|      | 3/28  | 10       |
|      | 4/4   | 17       |
|      | 4/11  | 18       |
|      | 4/18  | 12       |
|      | 4/25  | 24       |
|      | 5/2   | 18       |
|      | 5/9   | 25       |

**II.     Legal Standard**

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

**III.    Discussion**

Title VII prohibits retaliation, stating that:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because [the employee] has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

To establish a prima facie retaliation case, the plaintiff must satisfy the steps required by the *McDonnell Douglas* burden-shifting framework. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1229 (10th Cir. 2004). The plaintiff must show that (1) he engaged in protected opposition to discrimination; (2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse employment action. *Id.* (citing *O'Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1252 (10th Cir. 2001)). After the plaintiff meets the prima facie case, the employer must provide a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* The plaintiff must thereafter demonstrate that the employer's proffered reasons for the adverse action are pretextual. *Id*.

The Tenth Circuit employs a case-by-case approach when considering whether an action constitutes an adverse employment action. *See Trujillo v. N.M. Dep't of Corr.*, No. 98-

2143, 1999 WL 194151, at *2, (10th Cir. Apr. 8, 1999). To show that he or she was subject to an adverse employment action, "a plaintiff must show that a reasonable employee would have found the challenged action materially adverse," meaning that "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (citation omitted).

An action is an adverse employment action if it "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). However, "a mere inconvenience or an alteration of job responsibilities" does not constitute an adverse employment action. *Sanchez v. Denver Pub. Sch.*, 164 F.3d 527, 532 (10th Cir. 1998) (citing *Crady v. Liberty Nat'l Bank & Trust Co.*, 993 F.2d 132, 136 (7th Cir. 1993)).

In this case, the court finds that plaintiff has failed to meet the second and third elements of a prima facie retaliation case.[1] With regard to the second element, plaintiff has failed to establish that he suffered any adverse employment action. Plaintiff claims that defendant reduced his hours after plaintiff filed his charges with the KHRC and the EEOC, and that this action constitutes an adverse employment action.[2]

After performing several different calculations, the court finds that plaintiff's claim that defendant reduced plaintiff's hours in retaliation after he filed his discrimination charge is not

---

[1] The parties agree that plaintiff has met the first element, as his filing of charges with the KHRC and the EEOC constitute "protected opposition to discrimination."

[2] The parties both mention the change in plaintiff's position from a full-time to a part-time employee. The court finds that this fact does not impact the case. Plaintiff's change from full-time to part-time status occurred in September 2009—nearly nine months before plaintiff filed his charges with the KHRC and the EEOC—so there can be no connection between plaintiff's change from full-time to part-time status and any alleged retaliation by defendant. Furthermore, the evidence indicates that plaintiff was aware that his inability to work evening hours would result in plaintiff's change from full-time to part-time status.

supported by the evidence. In the 36 weeks[3] before he filed his charge, plaintiff was scheduled for 711 hours, providing an average of **19.75 hours per week**. In the 48 weeks after plaintiff filed his charge, he was scheduled for 962 hours, producing an average of **20.04 hours per week**. Even considering only the 36 weeks before and the 36 weeks after plaintiff filed the charge, the totals are an average of **19.75 hours per week** before the charge and **20.44 hours per week** after the charge.

None of the above calculations supports plaintiff's claim that defendant reduced plaintiff's hours after he filed his claim. As plaintiff pointed out, his scheduled hours did decrease and fluctuate somewhat starting the week of February 1, 2010. This date, however, is four months before plaintiff filed his charge on June 7, 2010. Defendant could not have retaliated against plaintiff for filing his claim if plaintiff had not yet filed it. Additionally, in late 2010 (after the charge was filed), plaintiff was actually scheduled to work substantially more hours than in early 2010 (before the charge was filed), when he was scheduled several times for 5 or even no hours. Moreover, after reviewing his scheduled hours, plaintiff agreed that his hours had not changed in any appreciable way after he filed his charge.

Considering the facts in the light most favorable to plaintiff, the court concludes that defendant has not taken any adverse employment action against plaintiff with respect to his hours. The average number of hours plaintiff was scheduled per week actually increased— although by a small amount—after plaintiff filed his discrimination charge. *See Keller v. Roadway Express, Inc.*, No. CIV.A.3:97-CV-1504-P, 1998 WL 133097, at *6 (N.D. Tex. Mar. 19, 1998) (finding no adverse employment action against the plaintiff with respect to hours

---

[3] The parties provided documentation of plaintiff's hours from September 28, 2009, through May 15, 2011, the time period during which plaintiff worked part-time. There were 36 weeks from September 28, 2009, up until June 7, 2010, when plaintiff filed his charge with the KHRC and the EEOC. There were 48 weeks after plaintiff filed his charge, between the weeks of June 7, 2010, and May 9, 2011(the court did not count the week of February 21, 2011, when plaintiff took a week of vacation).

when the plaintiff worked an average of 21.62 hours per week prior to filing his EEOC claim, as compared with an average of 21.98 hours per week after he filed his claim); *see also Baird v. Outlook Pointe*, No. 4:07-CV-1580, 2008 WL 4287382, at *10 (M.D. Pa. Sept. 17, 2008) (finding that variations in hours were not enough to establish material adversity when, after the relevant date, the plaintiff's hours actually increased and were then maintained at a level consistently higher than most of the plaintiff's prior tenure at her place of employment).

Because plaintiff has failed to prove the existence of an adverse employment action, plaintiff cannot establish that any such action was causally related to his protected activity. Thus, plaintiff also cannot meet the third element of a prima facie retaliation case. For these reasons, the court grants defendant's motion for summary judgment.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Summary Judgment (Doc. 50) is granted.

Dated this 31st day of August, 2012, at Kansas City, Kansas.

> s/ Carlos Murguia_____
> **CARLOS MURGUIA**
> **United States District Judge**